## Bissell *versus* Steel.

1. Scott shipped oil to Saxton to be sold on commission; at the shipment, Bissell made advances to Scott, who gave him drafts on Saxton against the oil and delivered to him the bills of lading without endorsement; the drafts were not paid. The oil was levied on in Saxton's hands on an execution of Steel against Scott. *Held*, that no property in the oil had passed to Bissell.

2. The transaction between Bissell and Scott was a loan or advance on the security of the oil to be repaid from the proceeds.

3. The law will not imply a sale when none is intended by the parties, nor when the contract is for a lien.

February 7th and 8th 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 100, to January Term 1871.

This was a feigned issue under a sheriff's interpleader, in which George H. Bissell and others, trading as George H. Bissell & Co., were claimants and plaintiffs, and A. H. Steel defendant; the issue was made up September 7th 1868. The goods in controversy were 516 barrels of petroleum, levied on as the property of H. W. Scott & Co. under an execution at the suit of A. H. Steel, the defendant in the interpleader.

On the 9th, 10th, 11th, and 13th days of July 1868, H. W. Scott & Co. shipped by the Empire Transportation Company four lots of petroleum. The bills of lading were all in the same form; the first was as follows:—

"Received, Rouseville, July 9th 1868, of H. W. Scott & Co., 50 barrels, said to contain C. oil, and marked to be transported to L. D. Saxton, consignee, at Philadelphia, at fifty-three cents (freight for this and connecting companies or agents), per one hundred pounds, subject to the following conditions and agreements." * * *

The bills for the several shipments were headed, "L. D. Saxton, bought of H. W. Scott & Co."

At the time of each shipment, advances were made by the plaintiffs; the bills of lading without endorsement and drafts on the consignee for the amount advanced were delivered to them "as security to the amount" of $2891.11; "the money was advanced on the faith of the drafts and bills of lading." All the drafts were protested for non-acceptance and non-payment.

The agent of the plaintiffs testified:—

"I had made former advances to Scott & Co. on the same terms. I had an understanding with them on the subject. Nothing particular was said when these advances were made."

L. D. Saxton testified: "I had no interest in the oil, and received it only to sell on commission for the consignors, to best

[Bissel *v.* Steel.]

advantage. I refused to accept the drafts because the price of oil declined."

The plaintiff having closed, the court directed a nonsuit, and afterwards discharged a rule to take it off.

This was assigned for error by the plaintiffs on the removal of the case to the Supreme Court.

*G. D. Budd* (with whom was *J. Clayton*), for the plaintiffs in error.—A factor who accepts a bill drawn against a particular consignment of goods placed in the hands of a third person for delivery to him, thereby acquires a property in the goods which will enable him to maintain replevin : Nesmith *v.* Dyeing Co., 1 Curtis 131.

Where personal property from its character or situation at the time of sale is incapable of actual delivery, a delivery of the bill of sale, or other evidence of title, is sufficient to transfer the property as against the creditors of the vendor : Gibson *v.* Stevens, 8 How. 384 ; The Sarah Ann, 2 Sumner 267 ; U. S. *v.* Del. Ins. Co., 4 Wash. C. C. Rep. 418 ; Schumacher *v.* Ely, 12 Harris 521 ; Allen *v.* Williams, 12 Pick. 297.

A consignor by an assignment of goods at sea passes the title as against every one but a bonâ fide endorsee of the bill of lading : Conard *v.* The Atlantic Ins. Co., 1 Peters 387 ; Conard *v.* The Pacific Ins. Co., 6 Id. 262 ; Howland *v.* Harris, 4 Mass. 497 ; 2 Kent's Com. 549, note.

Corporal seizure was unlawful in this case, because the property was vested in the plaintiffs, and in their possession : Srodes *v.* Caven, 3 Watts 258.

When the oil reached Saxton, it had fallen so much that the interest of Scott & Co. was valueless, and a sale would have been of no use : Commonwealth *v.* Contner, 9 Harris 266 ; Waterman *v.* Brown, 7 Casey 164. The assignment of the whole proceeds of a thing is certainly an assignment of the thing itself : Richardson *v.* Montgomery, 13 Wright 203 ; U. S. *v.* Vaughan, 3 Binn. 394 ; Stevens *v.* Stevens, 1 Ashmead 190.

*H. T. King*, for defendant in error.—The plaintiffs having made a claim to the absolute ownership, and thus stayed the execution, could not on trial set up a limited interest, or a lien, or equitable ownership, or a defeasible title : Meyers *v.* Prentzell, 9 Casey 482 ; Stewart *v.* Wilson, 6 Wright 450. Unless a bill of lading is endorsed, it passes no property : 1 Pars. on Con. 290 ; Stone *v.* Swift, 4 Pick. 389 ; Allen *v.* Williams, 12 Id. 297 ; Buffington *v.* Curtis, 15 Mass. 528 ; Act of 24th September 1866, § 1, Pamph. L. (1867) 1363, Purd. 1449, pl. 1.

A pledgee or holder of collateral security cannot appropriate it in satisfaction of the debt intended to be secured, at his own

[Bissell v. Steel.]

option, unless in pursuance of a contract, nor sell it without first giving notice to the pledgor of his intention to do so, in order that he may have an opportunity to redeem it if he desires: Diller v. Brubaker, 2 P. F. Smith 498; Sitgreave v. Bank, 13 Wright 359; Davis v. Funk, 3 Id. 243.

The opinion of the court was delivered, May 8th 1871, by

WILLIAMS, J.—If the plaintiffs were not the absolute owners of the oil levied on by the sheriff, then, under the ruling of this court in Meyers v. Prentzell, 9 Casey 482, and Stewart & Co. v. Wilson et al., 6 Wright 450, the judgment of nonsuit was rightly entered, and the court in banc properly refused to set it aside. Under the issue as formed the burden was on the plaintiffs of showing that at the time the oil was levied on it was their property. It was shipped by Scott & Co., the owners, from Rouseville, Venango county, by the Empire Transportation Company, to L. D. Saxton, their consignee in Philadelphia, to be sold for them on commission to the best advantage, The shipments were made on the 9th, 11th and 13th of July 1868. The plaintiffs made advances to Scott & Co. on each shipment, and took from them as security the bills of lading given by the transportation company and drafts on the consignee to the amount of the advance. The bills of lading were not endorsed by the shippers, and none of the drafts were paid. The first was protested for non-payment on the 21st and the others on the 23d and 24th of July 1868. The oil was levied on by the sheriff, on the 28th of July 1868, at the suit of the defendants as the property of the shippers. These are the material facts out of which the controversy in this case arises. Were the plaintiffs then the owners of the oil, or was it the property of Scott & Co. at the time it was seized by the sheriff? It is admitted that Scott & Co. were the owners at the time it was shipped, and that they sent it to their consignee to be sold on commission for their account. Did the plaintiffs, then, in making the advances, intend to purchase, and did Scott & Co. intend to sell them the oil? If not, the plaintiffs did not become the owners, though they may have acquired a lien for the amount of their advances. If the parties intended a sale, why were the bills of lading handed over as security, and why were drafts drawn on the consignee for the amount of the advances? Why were not the bills of lading assigned or endorsed to the plaintiffs, and why was not the consignee instructed to hold the oil subject to their order and to account to them for the proceeds of sale? There can be but one answer to the question, and that is, that the transaction was not intended as a sale, but as a loan or advance on the security of the oil, to be repaid out of the proceeds. If, then, the oil did not become the property of the plaintiffs when the advances were made, did it become theirs on the failure of the

[Bissell *v.* Steel.]

consignee to accept and pay the drafts? Doubtless it did, if this was the intention and contract of the parties. But it was not the contract, and there is nothing in the evidence from which such an intention can be inferred. Did the title then vest in the plaintiffs by operation of law on the failure to pay the drafts? If it did, it follows that the relation of the parties to each other was no longer that of debtor and creditor, but of vendor and vendee. And, if so, it operated not only as a sale of the oil, but as a satisfaction or extinguishment of the indebtedness for the advances. But the law will not presume a contract of sale when none is intended by the parties. Nor will it imply a sale when the contract is merely for a lien. The utmost right that the plaintiffs acquired to the oil under their contract with Scott & Co. was a lien on it for the amount of their advances. When, therefore, they claimed its ownership, they asserted a title to it which neither their contract nor the law gave them, and it follows that they were rightfully nonsuited.

Judgment affirmed.